UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **WILLIAM ALLEN** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **Civ. Action No. 4:12-cv-1066** |
| | § | |
| **CVS PHARMACY, INC. and CVS** | § | |
| **CAREMARK CORPORATION** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM & ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment. (Doc. No. 30.) After considering the Motion, all responses and replies, and the applicable law, the Court concludes that the Motion should be **GRANTED in part and DENIED in part**.

## I. BACKGROUND[1]

Plaintiff William Allen ("Plaintiff") was hired as a District Manger by Defendants, CVS Pharmacy, Inc. ("CVS Pharmacy") and CVS Caremark Corporation ("CVS Caremark").[2] At the age of 53, Plaintiff was the oldest manager in the region. He was hired to manage District 2, which was known to be a challenging district. (Guy Mabry Dep at 19:22 – 20:11, March 21, 2013; William Allen Dep. 87:13 – 88:2, 115:5-11, November 2, 2012.) During his tenure with CVS, Plaintiff was responsible for managing approximately 20 stores in the southwest Houston and Sugarland areas. District managers are responsible for managing the front store operations and pharmacy business of each of the stores under their management. (Doc. No. 30-4, at ¶ 5.) Each district manager is paired with a pharmacy supervisor, who reports to the district manager and

---

[1] The following facts in Section I are undisputed, except where noted.
[2] Plaintiff and Defendants disagree as to whether CVS Caremark is a proper Defendant in this case.

1

whole sole responsibility is to manage the pharmacy side of the business at each of the stores in their district. *Id.* Plaintiff was paired with Pharmacy Supervisor Arun Luke, who was considered by Defendants to be one of the top performing pharmacy supervisors in the area. *Id.* at ¶ 6.

Plaintiff was hired on June 28, 2009 by the Area Vice President, Denny Tewell, after Regional Manager, Scott Buchel, interviewed him and recommended his hire as a district manager. (Doc. No. 30-8; Doc. No. 30-4, at ¶ 3; Allen Dep. 90:3-6; Doc. No. 30-9.) Plaintiff was hired with his employer's intent that he would be included in the training program designed to groom certain district managers for promotion.[3] Plaintiff's immediate supervisor throughout his time at CVS was Buchel.

In 2009, during his first year at CVS, Plaintiff had an overall positive experience and received good performance reviews.  (Doc No. 36-2; Doc. No. 36.) Buchel noted that pharmacy performance in Plaintiff's district was among the best in the region, but that market orientation and district capability would require that some improvement be displayed by Allen. (Doc. No. 30-10.)[4] In 2010, Plaintiff's performance evaluation noted that the district delivered pharmacy service results in the top 10% of the company, but that total service results missed target by 1%) and placed the district near the bottom quartile in 2010. (Doc. No. 30-11.) Buchel noted on Plaintiff's 2010 evaluation that Plaintiff's placement into a regional manager training program would be delayed to allow Plaintiff additional time to develop an understanding of the CVS business model, and to

---

[3] Plaintiff and Defendants agree that Allen was hired with the intent to become a regional manager. However, according to Plaintiff, Tewell hired him for this purpose, while Bushel was adverse to it, because Plaintiff would be replacing Buchel. (Allen Depo 90:10-19, 91:1-8.) Defendant alleges that Buchel supported the decision to groom Allen for the regional manager position. (Doc. No. 30:4, at ¶ 4.)

[4] Allen's 2009 evaluation received one area identified as a significant strength, two areas identified as strengths, seven areas of competency, and two areas that needed some improvement. No areas were identified as needing significant improvement.

close several competency gaps. (Doc. No. 30-11.) Still, Plaintiff was rated as meeting expectations in 2009 and 2010. (Doc. No. 30-10 and 30-11.)

In 2010, Plaintiff reported that Buchel became very critical of him, and began to make offensive age-related comments. (Allen Dep. 92:3-10.)  Plaintiff alleges that Buchel would belittle Plaintiff stating that he was "getting deaf in his old age," having trouble seeing, and that Buchel preferred younger District Managers. (*Id.* 73:1-74:5.) Plaintiff alleges that other individuals also reported witnessing ageist comments towards him. For example, a store manager named Guy Mabry states he saw Buchel and Plaintiff together, and heard Buchel call Plaintiff an old-timer. (Mabry Dep. 29:13-30:14.) On a separate occasion, district manager David Keogh witnessed Buchel make an ageist comment. (Doc. No. 36-7, (Notes from Discrimination Investigation).) In May 2011, Plaintiff alleges that he met with Human Resources Business Partner, Chris Welch, and reported that Buchel was harassing him about his age. (Allen Dep. 70:1-9.) However, Defendants deny that Plaintiff made a harassment complaint in May 2011 (Doc. No. 37.)

On August 5, 2011, Plaintiff was given a "needs improvement" mid-year performance review after he allegedly demonstrated continued problems delivering results in front store operations. (Doc. No. 30-12.) Buchel further noted that Plaintiff's district was being strongly supported by pharmacy operations under Luke's guidance, whereas the other areas in the stores were significantly underperforming. (*Id.*; Scott Buchel Dep. 115:11-116:6, February 22, 2013.) Plaintiff sent an email thanking Buchel and Welch for their candid review. (Doc. No. 30-13.) In a follow-up to the performance review, Buchel presented Plaintiff with a 90-day performance improvement plan ("PIP") on September 1, 2011, in which Buchel listed the specific areas in which Plaintiff was

required to improve his performance. (Doc. No. 30-14.) Specifically, Buchel advised

Plaintiff that immediate improvement was required in merchandising, signage,

cleanliness and organization, and further advised Plaintiff that he expected all "front store

scores"[5] to reach at least 80% by the end of the year. *Id.* Buchel also reduced the hours

of operation of two of the most underperforming stores in Plaintiff's District. (Allen Dep

87:10-88:2.) At the same time that Buchel delivered the PIP, he also presented Plaintiff

with his first coaching and counseling form, which put Plaintiff on notice of further

disciplinary action should he fail to meet Defendants' expectations. The form stated: "If I

do not see immediate and sustained progress, then I will address it as the need arises or at

the end of the 90 days. The inability to meet and sustain any of these performance

expectations could result in disciplinary action, including termination of your

employment with the company." (Doc. No. 30-14.)

In the month after Plaintiff's PIP was issued, he continued to have difficulties

meeting Defendants' expectations. On September 26, 2011, Buchel discovered that

Plaintiff had failed to prepare a presentation that Buchel had requested in advance of a

conference call with Area Vice President Laura Underwood the following morning. (Doc.

No. 30-15.) Plaintiff claims he was not told that the Vice President would be in

attendance, and thus was unprepared. (Allen Dep. 130:18-133:25) On September 27 and

28, 2011, Buchel and Underwood separately visited one of the stores in Plaintiff's

district, store no. 5884, and reported that it was in complete disarray, with merchandise

on the floor, and shelves empty of merchandise. (Doc. No. 30-4, Buchel Decl. at ¶ 8.)

The following day, Buchel instructed Plaintiff to put a recovery plan in place to bring the

---

[5] Buchel noted that front store service issues—specifically customer complaints around coupon and return related transactions—had led to a front store service scores that were the lowest in the region at 75.9%. (Doc. No. 30-14.)

store into compliance with company standards. (Doc. No. 30-16.) On September 30, 2011, Buchel documented that, during a meeting, Plaintiff was still unable to articulate his recovery plan or identify any resources he required to clean up the store. *Id.* According to Defendants, on October 4, 2011, Buchel again toured two of Plaintiff's stores, including store no. 5884. (Doc. No. 30-17.) Defendants allege that Buchel told Plaintiff, once again, that the store conditions were below company standards and told Plaintiff that a second coaching plan would be issued the next morning. According to Plaintiff, Buchel never met with Plaintiff on October 4, 2011. (Allen Dep. 158:19-24.)

On October 5, 2011, Plaintiff suffered an injury while attempting to open the door to a store that had been damaged in an attempted burglary. (Doc. No. 30-19.) As a result of this injury, Plaintiff took a medical leave of absence lasting approximately a week and a half, and returned to work on or about October 17, 2011. (Doc. No. 30-30; Allen Dep. 156:4-18.) About a week after Plaintiff returned to work, Buchel and Plaintiff again toured store no. 5884. (Doc. No. 30-21.) Buchel observed many of the same issues that he had observed during his tour on October 4, 2011 and issued Plaintiff a coaching form with areas for improvement.

On or about October 26, 2011, Plaintiff sent a complaint to CVS's EthicsLine alleging that Buchel had harassed and retaliated against him both because of his age and his injury. (Doc. No. 30-22.) The EthicsLine assigned the complaint to Area Human Resources Director Brian Ridgeway to investigate. (Doc. No. 30-6, at ¶ 3.) Ridgeway states that he made the decision not to inform either Buchel or Welch about the complaint, absent any evidence corroborating Plaintiff's claims. (*Id.* at ¶ 4.) After initially speaking with Plaintiff about his complaint, Ridgeway interviewed several of Plaintiff's

peers to assess their experience as district managers under Buchel's supervision, and to determine whether anyone had witnessed any of the conduct alleged by Plaintiff. (Doc. No. 30-25.) None of the managers interviewed had heard Buchel make any inappropriate comments about age, or otherwise observed any behavior by him that would suggest discrimination or retaliation. *Id.* At the conclusion of his investigation, Ridgeway was unable to substantiate the allegations made by Plaintiff, and concluded that Buchel was appropriately holding Plaintiff accountable for poor performance. (Doc. No. 30-24.)

In early December, Plaintiff continued to have performance issues. On December 8, 2011, Buchel toured three stores with Plaintiff and Luke during which Buchel observed cluttered displays, a lack of cleanliness and organization, and low stock on the sales floor, while the back room was overflowing with inventory. (Doc. No. 30-28.) Also during the tour, Plaintiff often wandered off, leaving Buchel alone with the store managers who reported directly to Plaintiff, and with whom Plaintiff should have been working to remedy these issues. *Id.* After the tour, Plaintiff simply walked away without following Buchel and Luke into the regional office, as they normally did to re-cap observations made on the tour. *Id.* Luke told Buchel that Plaintiff's partnership and involvement on the pharmacy side of the business was "non-existent," and that, "[I]t is like he has just given up." *Id.* Shortly thereafter, Ridgeway and Employee Relations Specialist Andrea Gomes spoke with Plaintiff and explained to him that they were unable to substantiate his allegations against Buchel, and suggested to Plaintiff that he should focus his efforts on improving his performance. (Doc. No. 30-26.)

On December 22, 2011, Plaintiff sent an email to Gomes making additional allegations against Buchel. (Doc. No. 30-27.) At the end of Plaintiff's email, he requested

a severance package to exit the company, which was denied by Defendants. (*Id.*; Doc. No. 30-6, at ¶ 7.) In the final weeks of December, at roughly the same time he asked Gomes for a severance package, Plaintiff inexplicably cleaned out his office. (Doc. No. 30-24.) In light of these continuing issues, Buchel and Welch met with Plaintiff on January 18, 2012, to inform him of his termination. (*Id.*; Buchel Dep. 41:10-44:16.)

Plaintiff pleads the following three claims: (1) hostile work environment and wrongful termination in retaliation for filing a workers' compensation claim, in violation of Texas Labor Code § 451; (2) wrongful termination in retaliation of an age discrimination complaint, in violation of Texas Labor Code § 21.055; and (3) age-based hostile work environment, in violation of Texas Labor Code § 21.051. CVS moves for partial summary judgment on Plaintiff's first two claims.[6]

There are three additional issues that must be resolved by the Court—CVS Caremark's status as a defendant in this case, Plaintiff's withholding of an alleged wage overpayment, and the Court's rulings on objections and motions to strike filed by both parties.

## II. LEGAL STANDARD

Summary judgment is warranted when a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact in the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

---

[6] Defendants recognize that Plaintiff's third claim has an inherent factual dispute, since Plaintiff asserts that his supervisor made multiple age-related comments, while his supervisor denies that he made any such comments. (Doc. No. 30.)

The summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

## III. ANALYSIS

### A. CVS Caremark's Status as a Defendant

Before addressing parties' claims and cross-claims, the Court will first evaluate whether CVS Caremark Corporation, the parent corporation to CVS Pharmacy, is a proper defendant in this case. When determining whether a parent corporation should be included in an employment law case, the Fifth Circuit has adopted the hybrid control/economic realities test. *Trevino v. Celanese Corp*., 701 F.2d 397, 404 (5th Cir. 1983). Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id.* Courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations. *Id.* This criterion has been further refined to the point that "[t]he critical question to be answered then is: What entity made the final

decisions regarding employment matters related to the person claiming discrimination?"

*Odriozola v. Superior Cosmetic Distributors, Inc.*, 531 F.Supp. 1070, 1076 (D.P.R.1982)

*cited by Trevino v. Celanese Corp.,* 701 F.2d at 404 (5th Cir. 1983).

Defendants allege that CVS Caremark is simply a holding company and has no employees. (Doc. No. 30-7, at ¶ 3.) CVS Pharmacy, rather than CVS Caremark, was Plaintiff's only employer. Defendants argue that CVS Caremark does not own, operate, control, or manage any individual CVS pharmacies, and simply functions as the publicly-traded parent corporation of CVS Pharmacy.  *Id.*

Plaintiff argues that CVS Pharmacy and CVS Caremark maintain a centralized control of labor relations because Plaintiff's offer letter, employment application, employee handbook, and performance evaluations were on CVS Caremark letterhead. Additionally, Plaintiff alleges that his offer letter was signed by the Human Resources Director for CVS Caremark. (Doc. No. 36-4.)

Defendants respond that the fact that many documents bear the "CVS Caremark" logo is not dispositive under the hybrid control/economic realities test.  *Trevino*, 701 F.2d at 404. Defendants created various personnel-related documents for use by the various subsidiary companies under the CVS Caremark umbrella to promote uniformity and efficiency. (Doc. No. 37-3, at ¶ 3.) The Court finds that the mere use of letterhead with the title CVS Caremark is not sufficient to establish that CVS Caremark—a holding company with no employees—shares labor relations with its subsidiaries or is otherwise involved in employment decisions by its subsidiaries. *Torres v. Liberto Mfg. Co., Inc.*, 3-01-CV-1888-H, 2002 WL 2014426 (N.D. Tex. Aug. 30, 2002) aff'd, 67 F. App'x 252 (5th Cir. 2003) ("The fact that Liberto Specialty may have created a single employee

handbook to be utilized by each of its subsidiaries does not evince the kind of extreme control by a parent corporation over the operations of its subsidiaries so as to render it and its subsidiary a single employer."); *Bell v. United Parcel Serv., Inc.,* CIV. A. 3:98-CV-1235,  2000 WL 274274 (N.D. Tex. Mar. 10, 2000) (the evidence that UPSA publishes all employee handbooks and issues paychecks is legally insufficient to support a finding that UPSA was Bells' employer."); *Overseas Carriers, Inc. v. Team Ocean Servs.-Dallas, Inc.*, CIV.A. H-10-2842, 2011 WL 3875369 (S.D. Tex. Aug. 31, 2011) ("to hold one corporation liable for another's obligations, there must be more than . . . the mere use of common email addresses, fax machine, and letterhead.")

Defendants also assert that Human Resources Director Jimmy Griffin is an employee of CVS Pharmacy, not CVS Caremark. (Doc. No. 37-3, at ¶ 4.) Plaintiff has not alleged sufficient evidence to present a fact issue that CVS Caremark is a proper defendant in this case.  Therefore, CVS Caremark must be dismissed from this case, and the Court grants Defendants' summary judgment motion on this claim.[7]

**B. Retaliation and Hostile Work Environment Related to Workers' Compensation Claim**

**1. Retaliation**

Plaintiff claims that he was discharged by Defendants in violation of § 451.001 of the Texas Labor Code for having filed a worker's compensation claim after his workplace injury. The purpose of the statute is "to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefit." *Carnation Co. v. Borner*, 610 S.W.2d 450, 453

---

[7] Additionally, dismissing Caremark cannot possibly cause any harm to Plaintiff. There is no suggestion that the remaining Defendant would be unable to satisfy any judgment obtained.

(Tex.1980). To maintain a claim for workers' compensation retaliation, Plaintiff bears the initial burden of establishing a *prima facie* case, including the burden to prove a causal link between his workers' compensation claim and his termination from employment. *Terry v. S. Floral Co.*, 927 S.W.2d 254, 257 (Tex.App.—Houston [1st Dist.] 1996, no writ). To satisfy this *prima facie* burden, Plaintiff must show that "but for" his workers' compensation claim, the discharge would not have occurred. *Haggar Clothing Co. v. Hernandez,* 164 S.W.3d 407, 414 (Tex. App. 2003) *review granted, judgment rev'd on other grounds,* 164 S.W.3d 386 (Tex. 2005). This "but for" causation standard does not require the plaintiff to show that her involvement in the claim was the sole cause of her discharge. *Dillard Dept. Stores v. Hecht*, 225 S.W.3d 109, 121-22 (Tex. App.—El Paso 2005, pet. granted, judgment vacated w.r.m.). Rather, he must show that "but for" the filing of the claim, the discharge would not have occurred when it did. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–51 & n.3 (Tex.1996).  If Plaintiff successfully establishes a *prima facie* case, the burden shifts to Defendants to rebut the alleged retaliation by offering a legitimate, non-retaliatory reason for Plaintiff's termination. *Terry*, 927 S.W.3d at 257. Once Defendants have offered a legitimate, non-retaliatory reason for Plaintiff's termination, the burden shifts back to him to produce evidence of a retaliatory motive. *Id.*

The Texas Supreme Court has set forth the following factors to be considered when determining whether a causal connection exists between a worker's compensation claim and the worker's termination from employment: (1) knowledge of the worker's compensation claim by the decision-maker; (2) the employer's expression of a negative attitude toward the employee's injured condition; (3) the employer's failure to adhere to

established company policies; (4) discriminatory treatment received by plaintiff in comparison to similarly-situated employees; and (5) evidence that the stated reason for the discharge is false. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996).

Plaintiff suffered an on-the-job injury on October 5, 2011 when investigating an attempted burglary at one of the stores in his district. (Allen Dep. 155:12-159:18.) Plaintiff returned to work on October 17, 2011 with medical restrictions. *Id.* Defendants acknowledge that the first *Cazarez* factor is met since Buchel facilitated the filing of the worker's compensation claim, and thus had knowledge of it. However, mere knowledge of a claim is not sufficient to establish a causal link between the claim and the alleged discriminatory behavior. *Lone Star Steel Co. v. Hatten*, 104 S.W.3d 323 (Tex. App. 2003); *Garcia v. Allen*, 28 S.W.3d 587 (Tex. App. 2000). Thus, Plaintiff's basis for claiming retaliation is that, 1) Plaintiff's supervisors had a negative attitude towards his worker compensation claim, 2) Buchel delivered a coaching form to Plaintiff after he returned from his workplace injury, unreasonably demanding Plaintiff improve his performance.

According to Plaintiff, Luke told him to "watch his back" because Welch and Buchel were going to terminate him because he sought workers' compensation. (Allen Dep. 164:23-165:20.) Defendants deny that Luke made this comment. Even if Luke did make this comment, Defendants argue that it is irrelevant. Luke had no supervisory authority over Plaintiff, nor did he make or participate in the decision to terminate Plaintiff's employment. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, (1989) (O'Connor, J. concurring) ("Statements by non-decision makers, or statements made by

decision maker unrelated to the decisional process itself" are insufficient to establish discriminatory intent.) Plaintiff admitted that nobody with supervisory authority over him made any negative comments about his injury. (Allen Dep. 207:16-206:14.)

Second, Plaintiff argues that the coaching form given to him after he returned to work from his injury was fabricated in an effort to retaliate against him for an on-the-job injury. When Plaintiff returned to work, Buchel presented him with a disciplinary instrument called a Coaching and Counseling form, demanding Plaintiff improve his performance before the end of the PIP period or CVS Pharmacy would terminate Plaintiff. (Doc. No. 36-13.) Plaintiff argues that this form was falsified and backdated to October 4, 2011—before Plaintiff's injury—even though it was presented to him after his injury. Plaintiff alleges that this evidence establishes a retaliatory motive.

Defendants do not dispute that Buchel filled out form after Plaintiff's injury, yet dated it October 4, 2011. Defendants allege that Buchel dated the form in this manner because October 4th was the date Buchel communicated to Plaintiff that he would be receiving a coaching form. (Buchel Dep. 151:7-16; 153:4-154:24.) Plaintiff alleges that the October 4th meeting never occurred, and that the coaching form was filled out solely to retaliate because of Plaintiff's injury. (Allen Dep. 158:8-14, 19-24.)

Defendants argue that the coaching form should be disregarded because it is not an adverse employment action as a matter of law. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (an actionable adverse employment action must be an "ultimate employment decision" such as "hiring, granting leave, discharging, promoting and compensating"). However, *McCoy* only applies to Title VII claims, or claims brought under analogous state statutes contained in the Texas Commission on Human Rights

Act.[8] At least three Texas courts have opined that discrimination under section 451.001

can include employer action short of termination. *Castro v. U.S. Natural Resources, Inc.,*

880 S.W.2d 62, 65 (Tex.App.-San Antonio 1994, writ denied) (employee placed on

indefinite leave without pay when he attempted to return to work following an on-the-job

injury for which he filed a workers' compensation claim); *Southwestern Electric Power*

*Company v. Martin,* 844 S.W.2d 229, 232 (Tex.App.-Texarkana 1992, writ denied)

(change in employment status short of discharge can constitute discrimination within

meaning of section 451); *see Western Atlas International, Inc. v. Wilson,* 930 S.W.2d

782, 787 n. 1 (Tex.App.-Tyler 1996, writ denied) ("[t]he statute contemplates any manner

of discrimination including discharge"). The fact that the coaching form was not an

ultimate employment decision does not bar this Court's consideration of it.

The Court recognizes that there is a fact issue as to whether the form was

backdated in bad faith, as Plaintiff claims, or to reflect an earlier meeting Buchel and

Plaintiff had, as Defendants claim. However, assuming Plaintiff had demonstrated a

*prima facie* claim of workers' compensation retaliation through the coaching form, the

Court must next examine if Defendants have provided a legitimate, non-retaliatory reason

for Plaintiff's termination. *Terry*, 927 S.W.3d at 257.

Defendants argue that Plaintiff's poor performance, which predated the creation

of the coaching form, was the legitimate, non-retaliatory reason for Plaintiff's

termination. The performance problems listed in the coaching form refer to issues that

occurred before Plaintiff's injury. (Doc. No. 30-18.) For example, the form states that, on

---

[8] The purpose of the Texas Commission on Human Rights Act (TCHRA) is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." Tex. Lab.Code Ann. § 21.001(1) (Vernon 2006). Therefore, "'analogous federal statutes and the cases interpreting them guide the reading of the statute." *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001).

September 29, 2011, Plaintiff was directed to build an action plan for the recovery of

store no. 5884, and that Plaintiff failed to respond to this instruction. The coaching form

also notes that Plaintiff failed to properly prepare for a meeting on September 26, 2011.

Allen's performance deficiencies noted in the coaching form had already been

documented in emails from Buchel before his injury. (Doc. No. 30-15, 30-16, 30-36, 30-

37.) Therefore, Plaintiff's argument that Buchel falsified these performance problems—

to retaliate against him for filing a claim for workers' compensation—is unpersuasive.

Additionally, Plaintiff was not terminated until late December 2001, after the

expiration of the 90-day PIP that was instituted before his injury, and almost three

months after the injury itself. Defendants argue that an intervening injury should not

insulate Plaintiff from discipline or termination for performance issues that existed before

his injury. *Williams v. AT & T, Inc.*, CIV A H-07-0559, 2009 WL 938495 (S.D. Tex. Apr.

6, 2009) *aff'd*, 356 F. App'x 761 (5th Cir. 2009) (no evidence of retaliation where plaintiff

violated company policy and was subject to discipline for his performance *before* his

injury).

Given that Plaintiff's employer has shown that there was a legitimate reason

behind his discharge, the burden shifts back to Plaintiff to produce controverting

evidence of a retaliatory motive. *See Texas Division–Tranter, Inc. v. Carrozza,* 876

S.W.2d 312, 314 (Tex.1994). Plaintiff has not provided evidence that his termination was

a result of his filing a workers' compensation claim against the company, or even that the

claim was a determining factor in his discharge. *Terry*, 927 S.W.2d at 259. All of

Plaintiff's arguments concerning the coaching form involve performance issues

Defendants had found and documented *before* the injury. Even though Plaintiff states that

he believes he was discharged because of his workers' compensation claim, his subjective beliefs are not competent summary judgment evidence. *Carrozza*, 876 S.W.2d at 314. Therefore, the Court grants Defendants' motion for summary judgment on retaliation.

**2. Worker's Compensation Hostile Work Environment Claim**

To establish a *prima facie* claim that Defendants subjected Plaintiff to a hostile work environment because of his workers' compensation claim, Plaintiff must show that: (1) he was subjected to harassment for filing a workers' compensation claim; and (2) that the harassment affected a term, condition, or privilege of his employment. *Garcia v. Levi Strauss & Co.,* 85 S.W.3d 362, 369-70 (Tex. App.—El Paso 2002, no pet.) To rise to an actionable level, a hostile environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (*citing Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998)). In *Faragher*, the Supreme Court held that "simple teasing, offhand comments, and isolated incidents unless extremely serious will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788; *Shepherd v. Comptroller of Public Accounts,* 168 F.3d 871, 874 (5th Cir. 1999).

Plaintiff admits that neither Buchel nor Welch were ever critical regarding his injury.  (Allen Dep. 207:16-208:4.) The only hostile comment Plaintiff alleges is that Luke told him to "watch his back." (*Id.* 164:23-165:20.) Even if such a comment were made by a supervisor, it would not rise to the level of actionable harassment as a matter of law.  *Garcia*, 85 S.W.3d at 370-371 (in affirming summary judgment for the employer,

the court held that comments that injured workers were "stupid and illiterate," that the plant would close on account of injured workers, and a statement by a manager that the plaintiff "won't last here long" constituted "unfriendly incidents" that were not so severe and pervasive as to affect a term, condition or privilege of employment); *Cerre v. Odfjell Terminals*, No. 13-05-055-CV, 2006 Tex. App. LEXIS 4083 at *10-13 (Tex.App.—Corpus Christi May 11, 2006, no pet.) (the court found that the following comments from supervisors and co-workers did not constitute a hostile work environment as a matter of law: "[S]ay your back is all right.... You are going to end up paying for it. You don't want to file no comp claims;" "[O]h, we hear there ain't nothing wrong with your back;" "[Y]ou don't want to file a claim.... Man, don't file a claim. You're going to get terminated eventually."). Any harassment that Plaintiff experienced does not rise to an actionable level. Thus, Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

## C. Retaliation Related to CVS's EthicsLine Complaint

Plaintiff's retaliation claim is brought pursuant to § 21 of the Texas Labor Code. Both federal and state law aid in the analysis of Plaintiff's state claims because § 21 of the Texas Labor Code "is modeled after federal civil rights law," and federal and Texas courts "look to analogous federal precedent for guidance when interpreting the Texas Act." *NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Therefore, the *McDonnell Douglas* burden-shifting framework, which is used in federal discrimination cases, also applies in this § 21 retaliation case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). The Court finds that Plaintiff is unable to show direct evidence of retaliation;

therefore, he must follow the three-step burden shifting framework laid out in *McDonnell Douglas* and subsequently modified in *Rachid v. Jack in the Box, Inc*., 376 F.3d 305, 312 (5th Cir. 2004): (1) Plaintiff must establish a *prima facie* case of retaliation; (2) CVS must offer a legitimate, non-retaliatory reason for its actions; and (3) Plaintiff must prove that CVS's reason for his termination was a pretext for retaliation. *Id*. To establish pretext in the context of a retaliation claim, Plaintiff has the ultimate burden of demonstrating that "but for" the protected activity, he would not have been terminated. *Septimus v. Univ. of Houston*, 399 F.3d 601, 607-09 (5th Cir. 2005); *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 806 (5th Cir. 2007)

Plaintiff alleges he was terminated, in part, because of his EthicsLine Complaint regarding age discrimination. In order to prove a *prima facie* case of retaliation, Allen must prove that (1) he engaged in a statutorily-protected activity; and (2) a causal connection exists between the protected activity and a subsequent adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-60 (2006); *Septimus*, 399 F.3d at 610-11.

The parties do not dispute that Plaintiff participated in a statutorily-protected activity when he called the EthicsLine. However, in order to establish a causal connection between Plaintiff's complaint to the EthicsLine and his subsequent termination, Plaintiff must establish that the decision maker had knowledge of his complaint. *Anthony v. Donahoe*, 460 F. App'x 399 (5th Cir. 2012) (EEOC complaint not the but-for cause of employee's reassignment because supervisor had no knowledge of it); *Reynolds-Diot v. Grp. 1 Software, Inc.*, 3:03-CV-0245-M, 2005 WL 1980989 (N.D. Tex. Aug. 17, 2005) (granting Defendant's motion for summary judgment when supervisor terminating

Plaintiff had no knowledge of her sexual harassment complaint.). Plaintiff alleges that he complained about Buchel's ageist comments to Welch in May 2011. (Allen Dep. 70:1-9.) However, Welch disputes that Plaintiff complained to him. There is no documentation that Plaintiff complained to Welch. Still, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir.1997). Even taking Plaintiff's version of the facts as true, Plaintiff has no evidence that Welch informed Buchel about Plaintiff's complaint. Plaintiff argues that, "notably, Welch worked directly under Buchel and reported to him on a daily basis." (Doc. No. 36-8; Welch Dep. 26:6-20.) However, Plaintiff has provided no summary judgment evidence, beyond speculation, that Welch informed Belch of his complaint. Unsubstantiated assertions and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994). There is no competent evidence that Belch, the decision maker who terminated Allen, knew of Allen's May 2011 complaint.

The first documented complaint by Plaintiff was on October 26, 2011. This complaint was filed three months after Plaintiff's 2011 "need improvement" review was issued, two months after the PIP was issued, and five days after Plaintiff's second coaching.  (Doc. No. 30-22; Doc. No. 30-1; Allen Dep. 138:19-139:6.) Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claim since his performance problems were observed well before his October 26th complaint. *Clark County School Dist. v Breeden*, 532 U.S. 268, 272 (2001) (discipline contemplated prior to an employee's discrimination complaint, but not carried out until afterward, is "no evidence of causality"); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th

Cir. 2007) (plaintiff's evidence of retaliation was not compelling in light of her disciplinary record prior to her complaint); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) (affirming summary judgment because discipline began prior to the protected activity and further disciplinary action "simply complete[d] the disciplinary process already set in motion").

However, the Court need not decide whether Plaintiff's retaliation was justified on grounds of his poor performance. The Court finds that Plaintiff cannot establish that the decision maker responsible for terminating Plaintiff was aware of the complaint. Plaintiff has no evidence that Buchel was aware of the EthicsLine complaint. Ridgeway, not Buchel, was assigned to investigate the complaint. Defendants present uncontroverted evidence that Ridgeway did not inform Buchel or Welch about Allen's claims. (Doc. No. 30-6, at ¶ 3.) Because Plaintiff has not provided any evidence that Buchel had knowledge of his October complaint, Buchel could not have retaliated against Plaintiff for that complaint. *Anthony*, 460 F. App'x at 399; *see also Holmes v. Drug Enforcement Admin.*, 512 F. Supp. 2d 826 (W.D. Tex. 2007) (transfer not related to employment discrimination claim because nothing indicated board's knowledge of the complaints); *Bryan v. Chertoff*, 217 F. App'x 289, 293 (5th Cir. 2007) (no retaliatory nexus found where there was no knowledge of the employment discrimination complaints). The Court finds that there is no evidence of a causal nexus between Plaintiff's complaint and his termination. Therefore, Defendants are entitled to summary judgment on Plaintiff's § 21 retaliation claim.

### D. Defendants' Counterclaim

Defendants argue that they overpaid Plaintiff at the time of his termination in the amount of $3,294,91. Defendants pay their exempt employees once in the middle of each

month—thus Plaintiff had been paid for the entire month of January, though he was terminated on the 18th of that month. At the termination meeting, Buchel and Welch informed Plaintiff that, because he had already been paid for the entire month on January 12, he would need to return his wage overpayment for the nine business days in January following his termination that he would not be working. (Doc. No. 30-31; Welch Dep. 153:18-155:8.) Welch sent Plaintiff a letter on January 31, 2012 with instructions on how to submit payment to CVS in the amount of $3,901.50 (or $3,643.42 after taxes were deducted) for the wage overpayment. (Welch Dep. 155:1-8.)

Plaintiff argues that it was Defendants' practice to compensate salaried employees for an entire pay period upon being terminated from the company if that employee has worked any portion of that pay period at all. (Allen Dep. 217:8-223.)  Plaintiff also claims that the amount Defendants requested was incorrectly calculated because he had already paid for a full month of his insurance and car use. (*Id.* 220:22-221:4.) Furthermore, Plaintiff also alleges that he had already worked the number of hours expected of him in a full month, and thus he was entitled to keep his monthly salary.[9] (*Id.* 221:12-18.)

 Defendants argue that its policy is to have employees pay back a prorated amount based on the number of days that the terminated employee did not work in the month. (Welch Dep. 153:18-155:8; Doc. No. 30-32 (letter to Allen claiming the wage overpayment)). Defendants also allege that they subtracted the amount of the car and insurance payment from the total amount that Plaintiff owed.

---

[9] The Court notes there is no dispute that Allen was an exempt employee, not an hourly one. (Allen Dep. 221:12-15; 222-15-20.)

In essence, Defendants are bringing an unjust enrichment claim. *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex.App.—El Paso 1997, no writ). A cause of action for money had and received arises when one party obtains money which in equity and good conscience belongs to the other.  *Id.* Such a claim need not be premised on wrongdoing, but looks only to the justice of the case and inquires whether the party has received money which rightfully belongs to another. *Greer v. White Oak State Bank,* 673 S.W.2d 326, 329 (Tex.App.—Texarkana 1984, no writ). The information before the Court, which consists of dueling deposition testimony between Plaintiff and Welch, does not allow the Court to conclude whether Plaintiff has been unjustly enriched as a matter of law. The Court recognizes that Plaintiff's varying explanations for why he is entitled to the entire January salary create credibility concerns. However, this Court will avoid usurping the function of the jury by judging credibility; the Court's function is limited to determining whether there is a conflict in substantial evidence sufficient to create a jury question. *Borel v. Fireboard Paper Products Corporation*, 493 F.2d 1076 (5th Cir. 1973). It is unclear, from the evidence before this Court, whether CVS Pharmacy had a documented policy of paying its terminated employees for the entire month—or alternatively, a policy of requesting its terminated employees to return any windfall that had resulted from their termination.  The Court finds a genuine issue of material fact on this issue, and must deny its summary judgment motion Defendants' counterclaim.

**E. Objections and Motions to Strike**

**1. Former Employment Records**

Plaintiff objects to and moves to strike Defendants' summary judgment evidence related to performance reviews and employment records from Plaintiff's previous

employer.  Plaintiff argues that any information about prior employment is unfairly

prejudicial. Defendants claim that Plaintiff's previous employment records are admissible

because they go to show that Plaintiff had performance issues and was fired from his

previous job.

The admissibility of former employment records is dependent upon the

circumstances of the case and the prejudice those records may present. When considering

after-acquired evidence (evidence confirming wrongdoing by the plaintiff that would

limit the relief available), the Supreme Court cautioned that employers should not, as a

routine matter, undertake extensive discovery into an employee's background or

performance to resist claims of discrimination. *McKennon v. Nashville Banner*

*Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Here, there is no

indication that Plaintiff made any false or misleading statements to Defendants in his

employment application. Some courts have found that, absent a viable after-acquired

wrongdoing claim, a defendant should not be permitted to discover or introduce evidence

related to poor performance at a former employer. *See, e.g., Sanders v. Dalcraft LLC,* No.

3–09–CV–0307–P, 2009 WL 1392602, at *2 (N.D.Tex. May 18, 2009) (rejecting

argument that employment records from plaintiff's former employer "may show

performance deficiencies similar to those relied upon by [the defendant] to justify

termination"); *Ireh v. Nassau Univ. Med. Ctr.*, CV06-09 LDW/AKT, 2008 WL 4283344,

at *5 (E.D.N.Y. Sept. 17, 2008) *aff'd*, 371 F. App'x 180 (2d Cir. 2010) (ruling that

plaintiff's performance during prior employment not relevant to work performed for

defendant and that prior employment records not likely to lead to discovery of admissible

evidence as such evidence would be inadmissible under Federal Rule of Evidence

404(a)); *Maxwell v. Health Ctr. of Lake City, Inc.*, 3:05CV1056-J-32MCR, 2006 WL 1627020, at *4 (M.D. Fla. June 6, 2006) (ruling that plaintiff's performance at previous jobs not relevant nor reasonably calculated to lead to admissible evidence because Rule 404(a) would exclude such evidence).

However, a number of cases—including the two cases cited by Defendants[10]— have also found that a plaintiff's past employment records could reasonably bear on the credibility of a plaintiff's allegations regarding "his performance, his qualifications, and the legitimacy of a defendant's proffered bases for the performance ratings in assigned to plaintiff." *Levitin v. Nationwide Mut. Ins. Co.*, 2:12-CV-34, 2012 WL 6552814 (S.D. Ohio Dec. 14, 2012); *see also Valentine v. Remke Markets, Inc.,* No. 1:10–CV–922, 2012 WL 893880, at *3–4 (S.D.Ohio Mar.15, 2012); *Serrano v. Cintas,* No. Civ.A. 04–40132, 2006 WL 585714, at *1–2 (E.D.Mich. Mar.9, 2006).

The Court has not relied on Plaintiff's past employment records in this Memorandum & Order. Any ruling on Plaintiff's former employment records is reserved for trial, where a more in-depth analysis of the probative value and prejudicial harm may be taken on.

**2. Plaintiff's Day Planners**

Defendants move to strike Plaintiff's day planners as inadmissible hearsay. (Doc. No. 36-6.) Defendants also argue that the day planners are inherently unreliable based on the circumstances under which they were produced.[11] Plaintiff relies on his day planners

---

[10] In support, Defendants cite *Gragossian v. Cardinal Health, Inc.*, No. 07-CV-1818-H, 2008 U.S. Dist. LEXIS 55680, at *7-`4 (S.D. Cal. July 21, 2008.) and *Scherr v. Univ. of Wyoming*, Case No. 06-CV-191, 2007 U.S. Dist. LEXIS 96141 at *1-2 (D. Wyo. July 13, 2007).

[11] Defendants claim that Plaintiff produced only portions of his notes in discovery, with notes about age-related comments made in the margins or at the bottom of the page. Defendants raise doubts that Plaintiff's notes were made contemporaneously. (Doc. No. 37.)

to support his allegations that Buchel harassed him because of his age. Because of the inherent fact issue present in deciding whether Buchel made those alleged statements, the Defendants have not moved for summary judgment on Plaintiff's § 21 hostile environment claim. Therefore, the Court reserves any ruling on the day planners for trial.

## IV. CONCLUSION

The Court **GRANTS** Defendants' summary judgment motion with respect to (1) Plaintiff's § 451 retaliation claim, (2) Plaintiff's § 451 workers' compensation hostile environment claims, and (3) Plaintiff's § 21 retaliation claim. CVS Caremark is **DISMISSED** as a defendant from this case. Summary Judgment with respect to Defendants' counterclaim is **DENIED.** Objections and Motions to Strike are reserved for trial.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 25th day of July, 2013.

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**